FILED

2011 Jun-22  PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

DAVID BELCHER,                    ]
                                  ]
        Plaintiff,                ]
                                  ]
    vs.                           ]   6:10-CV-00338-LSC
                                  ]
CENTRAL CREDIT SERVICES, INC.,    ]
                                  ]
        Defendant.                ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment (Doc. 14) and a motion for partial summary judgment (Doc. 30), both of which were filed by the defendant, Central Credit Services, Inc. ("Defendant" or "CCS"). Plaintiff David Belcher ("Plaintiff" or "Belcher") filed the above-entitled action against CCS on February 16, 2011, alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as negligent/wanton training and supervision and invasion of privacy under Alabama state law. (Doc. 1.) The issues raised in Defendant's motions for summary judgment have been briefed by the parties and are

now ripe for decision.[1]  Upon full consideration of the legal arguments and evidence presented, Defendant's motions will be granted in part and denied in part.

II.    Facts.[2]

On or around December 10, 2001, Monogram Credit Card Bank ("Monogram") obtained a judgment ("the Judgment") against Belcher in the amount of $845.49, plus $76.50 in court costs.   The Judgment was subsequently recorded in Walker County, Alabama.  On November 5, 2009, Monogram placed the Judgment with CCS, through Eltman, Eltman & Cooper, for collection.   CCS was informed that the amount due on the account was $1,815.99, plus interest ("the Debt").  (Doc. 22 at 3.)

---

[1]On June 3, 2011, Defendant filed a motion to strike Belcher's affidavit.  (Doc. 35.)  Because Belcher's affidavit was never filed with the Court, there is nothing to strike.  Defendant's motion is MOOT.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

After November 5, 2009, CCS attempted to contact Belcher by telephone in order to collect the Debt.  CCS's records show that it called Plaintiff approximately 46 times between November 5, 2009, and December 2, 2009.  CCS contends that of those 46 telephone calls, CCS representatives left five voice mails and spoke with Belcher or his wife only four times. (Doc. 29 at 6.)  During a telephone call on November 30, 2009, Plaintiff provided the name and contact information for his attorney.   After November 30, 2009, all of CCS's communications regarding the Debt were made to Belcher's attorney.  (Doc. 22 at 3.)

Belcher contends that he did not incur the Debt and knows nothing about the charges that are the subject of the Debt.  On December 20, 2010, Plaintiff secured an order in the District Court of Walker County, Alabama, setting aside the Judgment.

III.   Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."

---

[3]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

*Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.   FDCPA Claims.

In his lawsuit, Belcher contends that CCS violated §§ 1692b(1)-(3); 1692c(a)-(b); 1692d; 1692e(2)-(5), (7)-(8), (10)-(14); 1692f; and 1692g(a) of FDCPA.  In response to Defendant's motion for summary judgment, Belcher voluntarily dismissed his claims under §§ 1692b; 1692c(b); and 1692e(3)-(5), (7)-(8), (11)-(14).   (Doc. 24 at 12.)   Therefore, the Court has for consideration Plaintiff's FDCPA claims under §§ 1692c(a) (improper contact with the consumer); 1692d (harassment or abuse); 1692e(2) (false representation of amount of debt); 1692e(10) (use of false representation or deception to collect debt or obtain information); 1692f (unfair practices); and 1692g(a) (validation of debts).  CCS moved for summary judgment on each of these claims.

### 1.   Consumer Debt.

Defendant argues that Belcher cannot establish any claim under FDCPA because he has not shown that the Debt is a "debt," as defined by FDCPA. Pursuant to 15 U.S.C. § 1692a(3), the "term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."  A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  Defendant contends that Belcher cannot present sufficient evidence that the Debt was the result of a transaction made primarily for personal, family, or household purposes.  (Doc. 30.)

CCS maintains that it "does not know the nature of the charges giving rise to the [D]ebt."  (Doc. 32 at 7.)  Plaintiff testified that he "didn't make the [D]ebt," so he "do[es not] know what it's all about."  (Belcher Dep. at 67.)  It is undisputed by the parties that the Debt is the result of alleged charges incurred on a credit card; specifically, the charges were incurred on a Lowe's store credit card.  It is also undisputed that the Debt allegedly was

made in Belcher's name—not in the name of any business or other institution.  Belcher does not run a business or earn any income from a business, and he retired from the Alabama Air National Guard in 1996.  (*Id*. at 11-13.)

One of the purposes of FDCPA is to ensure that "every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner."  *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1178 (11th Cir. 1985) (quoting 123 Cong. Rec. 10241 (1977) (statement of Representative Annuzio, Chairperson of Subcommittee that sponsored the legislation)).  Plaintiff denies that he incurred the charges that are the subject of the Debt and swears he has no knowledge about those charges. CCS wants the Court to accept its argument that its conduct toward an individual who denies incurring a debt or any knowledge of that debt is not subject to the restrictions of FDCPA if CCS also claims ignorance regarding the underlying transactions that comprise the debt it is collecting. A plaintiff must prove the elements of his claim.  However, if a debt collector cannot provide any evidence regarding the nature of the transactions underlying a debt, a plaintiff cannot prove the specific character of

something he swears does not exist.  Because the alleged charges at issue were made on a store credit card in Belcher's name, and Belcher did not testify that he receives any income from a business, there is sufficient evidence in the record that a reasonable jury could conclude that the alleged charges would be "the result of a transaction made primarily for personal, family, or household purposes."  Defendant's motion for partial summary judgment for lack of proof of a "consumer debt" will be denied.

>          2.       Improper Contact with the Consumer.

Plaintiff maintains that CCS violated 15 U.S.C. § 1692c(a) by communicating with Belcher after becoming aware that he was represented by counsel.  (Doc. 24 at 13-14.)  Section 1692c(a) provides as follows:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
>
>> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a

consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

Plaintiff argues that CCS violated § 1692c(a)(2) by calling Belcher on November 30, 2009, and December 2, 2009, after being told that he was represented by counsel on November 23, 2009.  (Doc. 24 at 13-14.)

Defendant denies Plaintiff's allegations of a FDCPA violation, but moves to dismiss the § 1692c(a)(2) claim as improperly plead in response to a summary judgment motion.  In the Complaint, Belcher contends that "Defendant violated § 1692c(a) . . . by repeatedly calling the Plaintiff, and by calling the Plaintiff outside of the time prescribed by the statute."  (Doc.

1 ¶ 14.)   There are no factual allegations related to a § 1692c(a)(2) violation.  In the parties' Joint Status Report, Plaintiff again only makes mention of repeated calls and calls made outside the time prescribed by statute.  (Doc. 22 at 4 ¶ 3.)

Plaintiffs cannot add new legal claims in response to summary judgment.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006).  "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."  *Id*.  Belcher has not sought to amend the Complaint to add a claim under § 1692c(a)(2); therefore, his allegations with regard to Defendant contacting him after having knowledge of his attorney are not properly before the Court.

Plaintiff fails to make any argument in opposition to summary judgment regarding his § 1692c(a)(1) claim that CCS repeatedly called outside of the time prescribed by the statute.  Accordingly, the Court finds this claim has been abandoned.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.

2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")

       3.    Harassment or Abuse.

15 U.S.C. § 1692d prohibits any conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  The Eleventh Circuit has indicated that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse."  *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985).

Plaintiff alleges that CCS engaged in harassment and abuse by making 46 phone calls in 28 days.  On several days, five to seven calls were made. (Doc. 24 at 15-16.)  Plaintiff also maintains that one collector used "some pretty tough words" that he felt were threatening.  (*Id*. at 16.)  Defendant concedes that 46 phone calls were made to Belcher's residence, but

contends that of those 46 telephone calls, CCS representatives left five voice mails and spoke with Belcher or his wife only four times.  (Doc. 29 at 6.)

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter*, 760 F.2d at 1179.  In an unpublished opinion, the Eleventh Circuit Court of Appeals recently reversed this Court's determination that 300 phone calls over a time period of two and a half years were not unreasonable because many of the calls went unanswered. *Meadows v. Franklin Collection Serv., Inc.*, 2011 WL 479997 at \*2 (February 11, 2011).  The appellate court noted that "a ringing telephone, even if screened and unanswered, can be harassing, especially if it rings on a consistent basis over a prolonged period of time and concerns debts that one does not owe." *Id*. at \*3.  Taking the facts in the light most favorable to the plaintiff, Belcher testified that he never made charges on a Lowe's credit card and knew nothing of the debt in question; he received continuous phone calls from phone numbers identified with the defendant—sometimes up to five or six calls a day; and Belcher testified that he suffered sleeplessness and felt harassed by the frequent calls (Belcher Dep. at 74-

75).  Accordingly, there is a genuine issue of material fact whether CCS "caused [Belcher's] telephone to ring with the intent to annoy or harass" him.  *Id*. at *2.

### 4.    False Representations.

15 U.S.C. § 1692e prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Plaintiff sued CCS for violations of parts (2) and (10).  Section 1692e(2) addresses the false representation of "the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  Plaintiff argues that the Judgment did not provide for post-judgment interest or other fees; therefore, the amount CCS sought to collect was incorrect and fraudulent.  (Doc. 24 at 16-17.)  Section 1692e(10) pertains to the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Belcher maintains that CCS does not have proof of assignment or ownership of the Debt; therefore, it falsely represented its ability to collect the Debt.   (Doc. 24 at 17-18.)

Addressing Plaintiff's latter argument first, the Court notes that Belcher agreed to few "undisputed" facts in the parties' Joint Status Report. (Doc. 22 at 3.)  However, one of those "undisputed facts" was that the Judgment "was placed with CCS by Eltman, Eltman & Cooper for collection on November 5, 2009."  (*Id*. at 3 ¶ 2.)  Plaintiff argues that CCS does not have proof of assignment or ownership of the debt, but Belcher has not established that an entity is required to own a debt in order to have the authority to collect that debt.  It is Plaintiff's burden to prove that CCS made false representations, in violation of § 1692e.  Plaintiff has not submitted any evidence that CCS made any false, deceptive, or misleading representations regarding its ability or authority to collect the Debt.  CCS is entitled to summary judgment on this claim.

The Court turns to Plaintiff's claim that CCS made false representations regarding the amount of the Debt.  It is undisputed that CCS was informed that the amount due and owing on the Debt's account was $1,815.99, with interest accruing.  (Doc. 22 at 3 ¶ 2.)  Defendant contends that it sent an "initial dun" letter to the plaintiff on November 9, 2009, which stated that the Debt currently stood at $1,817.19.  (Doc. 29, Whitson

Aff. ¶ 6 & Ex. A.)  Plaintiff argues that the Judgment at issue does not provide for interest, and the resulting Debt should only be $921.99.

The "initial dun" letter is the only alleged "false" representation about the amount of the Debt that is identified by the plaintiff.  (Doc. 24 at 17.)   However, Belcher claims he never received any written correspondence from the defendant and he never received the "initial dun" letter.  In fact, the non-receipt of the "initial dun" letter forms the basis of his § 1692g claim, discussed *infra*.   If no one received the alleged false statement, then the communication was not complete.  Plaintiff cannot hold Defendant liable for an alleged false misrepresentation that he never received, read, or knew about prior to this lawsuit.

If Plaintiff received the "initial dun" letter, he had the obligation to follow the procedures outlined therein to dispute the amount of the debt. *See, e.g., Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994) ("[T]he court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information

between debt collectors and debtors.").  As Defendant argues in its reply

memorandum, it is generally accepted that debt collectors may not have the

same information regarding a debt that the creditor has.  Therefore, FDCPA

requires debt collectors to send notices that outline a consumer's right to

verification of the debt and right to contest a collector's claims.  *See*

*Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) (citing 15 U.S.C.

§ 1692g).  CCS has proffered evidence that an "initial dun" letter mailed to

Belcher read, in part:

> Unless you notify this office within 30 days after
> receiving this notice that you dispute the validity of
> this debt or any portion thereof, this office will
> assume this debt is valid. If you notify this office in
> writing within 30 days from receiving this notice that
> you dispute the validity of this debt or any portion
> thereof, this office will obtain verification of the
> debt or obtain a copy of a judgment and mail you a
> copy of such judgment or verification.

(Doc. 29, Whitson Aff. Ex. A.)  15 U.S.C. § 1692k provides that a "debt

collector may not be held liable in any action brought under this subchapter

if the debt collector shows by a preponderance of the evidence that the

violation was not intentional and resulted from a bona fide error

notwithstanding the maintenance of procedures reasonably adapted to avoid

any such error."  The "initial dun" letter, which provides a means by which a debtor can challenge the amount or validity of a debt is one such procedure.  It is undisputed that Plaintiff never responded in writing after the "initial dun" letter was sent.  Per the terms of the "initial dun" letter, CCS assumed the amount of the Debt was valid.  Summary judgment will be entered in favor of the defendant on Plaintiff's § 1692e(2) claim.

       5.    Unfair Practices.

Plaintiff also contends that CCS is liable under 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt."  Specifically, Belcher cites § 1692f(1), which addresses the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Again, Plaintiff points to the Debt amount stated in CCS's "initial dun" letter as evidence of an attempt to collect an improper amount.  (Doc. 24 at 19-20.)  For the same reasons the Court granted summary judgment to the defendant with regard to Plaintiff's § 1692e(2) claim, discussed above,

summary judgment will also be entered in favor of CCS with regard to Plaintiff's § 1692f(1) claim.

      6.    Validation of Debts.

Plaintiff further maintains that CCS violated the provisions of 15 U.S.C. § 1692g.  Section 1692g(a) requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Plaintiff "contends that he did not receive a Notice of Debt in compliance with Section 1692g." (Doc. 24 at 20-21.) However, he acknowledges that it is his burden to show that the debt verification notice was *not* sent. (*Id*. at 21.)

The majority of courts that have addressed this issue have determined that § 1692g only requires the debt collector to *send* the written notice described; the provision does not require that the notice be *received* by the debtor. *See, e.g.*, *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999); *Antoine v. J.P. Morgan Chase Bank*, 757 F. Supp. 2d 19, 22-23 (D.D.C. 2010); *Zamos v. Asset Acceptance, LLC*, 423 F.Supp.2d 777, 785 (N.D. Ohio 2006); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087,1097 (D.Or. 2000). It is undisputed that the Debt account was placed with CCS for collection on November 5, 2009, and CCS attempted to contact Belcher on that date. Defendant has proffered evidence that an "initial dun" letter was generated and sent to

Belcher's home address on November 9, 2009.  (Doc. 28, Whitson Aff. ¶ 6, Ex. A.)  Plaintiff does not dispute that the "initial dun" letter, if sent, meets the criteria outlined in § 1692g.  Belcher also fails to present any evidence that the "initial dun" letter was not mailed to him at his home address. Plaintiff denies receipt of the notice, but also testified at his deposition that he could not swear he never received anything from the Defendant.  (Pl. Dep. at 29.)  Belcher testified that if he had received any letters from CCS, he would have thrown them away.  (*Id*.)

Belcher has not met his acknowledged burden to produce sufficient evidence to convince a reasonable jury that CCS did *not* send the debt verification notice(s) required by § 1692g.  Accordingly, summary judgment will also be entered in favor of the defendant on this claim.

B.    State Law Claims.

In addition to his FDCPA claims, Belcher also sued CCS for negligent/wanton training and supervision and invasion of privacy under Alabama state law.[4]

_____

[4]Plaintiff argues in his response brief that he also has state law claims for fraud and negligence/recklessness/wantonness.  (Doc. 24 at 23-24.)  These claims are not included in the Complaint.  (Doc. 1.)  As discussed previously, a plaintiff may not add

1.     Negligent/ Wanton Training and Supervision.

The Alabama Supreme Court has addressed claims for negligent or

wanton training and supervision as follows:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

---

new legal claims in response to summary judgment.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006).

*Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1214-15 (Ala. 2008) (quoting *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993)).

Plaintiff contends that "employees of the Defendant negligently or recklessly and wantonly failed to comply with the FDCPA . . . [and] committed the torts of fraud and invasion of privacy.  The Defendant had actual knowledge of said violations through review of the recorded transcripts and account notes which are part of the court record." (Doc. 24 at 25-26.)  However, Belcher only cites to the transcript of one recorded phone call conversation as support for his argument that CCS employees engaged in wrongdoing.  (*Id.* at 26.)  Even if that transcript evidenced wrongful conduct on the part of the CCS employee, "[i]t is not sufficient merely to allege, or to show, that the employee acted incompetently." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 683 (Ala. 2001).  "A plaintiff must establish by affirmative proof that the employer actually knew of the incompetence, or that the employer reasonably should have known of it." *Id.* (quotations omitted).  "To carry this burden, the

plaintiff may show either that he informed the employer about specific misdeeds of the employee, or that the employee's misdeeds were of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice." *Id.* (quotations omitted). Moreover, "[a] mistake or single act of negligence on the part of an employee does not establish incompetency." *Southland Bank*, 21 So. 3d at 1216.

Belcher has not met his burden to show substantial evidence of negligent or wanton training and supervision. Summary judgment will be granted to the defendant on this claim.

　　　　2.　　Invasion of Privacy.

Finally, Plaintiff maintains that CCS "invaded his privacy by making repeated harassing phone calls to his home during the collection of the debt, in conjunction with other actions which exceeded the bounds of reasonableness." (Doc. 24 at 27.) The "other actions" alleged by the plaintiff, however, have little to do with privacy and merely rehash his previous arguments, such as alleged misrepresentations regarding the

amount of the Debt and failing to show authority to collect the Debt.  (*Id*. at 29.)

"Alabama recognizes that a person has an actionable right to be free from the invasion of privacy." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985).  The law prohibits "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Id*. (quoting *Smith v. Doss*, 37 So. 2d 118, 120 (1948).  While a creditor has the right to pursue and collect a debt, the actions the creditor takes must not "exceed the bounds of reasonableness." *Barnwell*, 481 So. 2d at 865-66.

Plaintiff concedes that in order to establish a claim for invasion of privacy in connection with a debt collection process like the one at issue in this case, a plaintiff must show "some conduct in addition to numerous harassing calls." (Doc. 24 at 27.)  In *Barnwell,* the Alabama Supreme Court affirmed a jury's finding of invasion of privacy after the plaintiff presented evidence that the defendant placed thirty-five phone calls to the debtor's home, place of business, and even his mother; used threatening, coarse, and malicious language; and, "most importantly," fraudulently altered the terms

of a security instrument in order to try to collect the debt at issue. *Barnwell*, 481 So. 2d at 866.  The court concluded that the "jury was warranted in finding these actions on the bank's part were outrageous to a person of ordinary sensibilities." *Id*.

In this case, forty-six phone calls were made in a relatively short time period.  Most went unanswered.  While such conduct could be found by a jury to constitute harassment under FDCPA, as outlined above, Plaintiff has not shown the existence of additional outrageous or unreasonable conduct that would support a jury's decision that CCS is liable for invasion of privacy under Alabama law.  The phone call transcripts reveal that CCS employees were polite in their conversations with the plaintiff.  In fact, in one conversation, Belcher casually discussed Alabama sports and his military background with the caller.  Plaintiff has not met his burden to show that CCS intruded into his private activities "in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."  Accordingly, summary judgment is due to be granted on his invasion of privacy claim.

V.    Conclusion.

For the reasons stated above, Defendant's motions for summary judgment will be granted in part and denied in part.  A separate order will be entered.

Done this 22nd day of June 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297