FILED
2011 Jul-11 PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

|  |  |
|---|---|
| **DAVID BELCHER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:10-cv-338-LSC |
| ) | |
| **CENTRAL CREDIT SERVICES,** ) | |
| **INC.,** ) | |
| ) | |
| Defendant. | |

## <u>DEFENDANT'S MOTION IN LIMINE</u>

COMES NOW Defendant Central Credit Services, Inc., (hereinafter "CCS") and moves this Court, *in limine*, to exclude any and all argument, evidence and testimony regarding the topics enumerated as follows:

## UNOPPOSED MOTIONS

**1.    Insurance Coverage**

Evidence of or reference to the existence of any liability insurance coverage that may cover Defendant should be excluded because it is unfairly prejudicial, would confuse the issue and mislead the jury. Fed. R. Evid. 403.

**2.    Appeal to Jury's Bias or Sympathy**

The Defendant requests that counsel for the Plaintiff be prohibited during voir dire and during opening and closing statements from making any appeal to the

{W0296230.1 }

jurors' personal interest, personal sympathies, or bias regarding debt collection or debt collectors as such references are irrelevant and prejudicial.  Fed. R. Evid. 401, 402 and 403.

## OPPOSED MOTIONS

### 3. The Corporate Status and Financial Condition of CCS

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is only relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Any evidence regarding CCS' corporate status, size or financial condition fails to meet his standard, regardless of the purpose for which it may be offered.  Plaintiff claims CCS' collection activity constitutes harassment under the FDCPA.  The corporate status, size or financial condition of CCS contributes nothing to the determination of liability that the jury must make in this case, and it should therefore be excluded. Even if this evidence were somehow minimally relevant, which it is not, evidence regarding CCS' corporate status, size or financial condition should be excluded because it would unfairly prejudice CCS, confuse the issues and mislead the jury. Fed. R. Evid. 403.  Because such references are irrelevant and prejudicial, Defendant respectfully requests that they be precluded from trial.

Opposing counsel has indicated a desire to advise the jury how many employees the Defendant has, the number of collectors, or the number of offices it may maintain. Such evidence seeks to do by implication what the law prohibits explicitly. By portraying the Defendant has a "big" company, an out of state company, or a large collector, the Plaintiff introduces matters that are irrelevant to the issues in dispute. It can only be offered in the hopes that it will prejudice the jury against a corporate defendant based on its size, perceived wealth, or status as an out of state business. There is no legitimate means for the introduction of this evidence and it should be excluded.

### 4. Improper Remarks Regarding Defendant or Defense Counsel

The Defendant requests the Court preclude Plaintiff from making any direct or indecent reference in the presence of the jury, during either voir dire or trial regarding (1) the Defendant's status as a foreign, out-of-state, or "far away" corporation and (2) any reference that Mr. James Bedell is a resident of Minnesota. Such matters are not relevant to the adjudication of any fact or issue in this lawsuit and must therefore, be excluded. F. R. Evid. 402.

Moreover, such argument, testimony, evidence or reference would unfairly prejudice the Defendant, confuse the issues and mislead the jury. This potential prejudice substantially outweighs any slight probative value such arguments have. Any reference to these matters must therefore be excluded. Fed. R. Evid. 403; *see*

*Wesbrook v. Gen. Tire & Rubber Co.,* 754 F.2d 1233, 1238-39 (5th Cir. 1985) (finding that counsel's "us-against-them" appeal to community loyalty constituted an "improper distraction from the jury's sworn duty to reach a fair, honest and just verdict according to the facts and evidence presented at trial"); *Hall v. Freese*, 735 F.2d 956, 960-61 (5th Cir. 1984) (holding that defense counsel created clear prejudice when he commented to the jury that plaintiff and her attorneys has "flown in" from a large city); *Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375-76 (6th Cir. 1971) (noting that plaintiff's lawyer's comments that defendant's lawyers were "city lawyers" and "Philadelphia lawyers" was in "extremely poor taste").

Opposing counsel has advised of their intention to put on evidence that the Defendant is an out of state company and/or that one of its counsel of record is not from Alabama. Similar to the above arguments, this information has no bearing on the legal and factual issues in this case. The Plaintiff is just as susceptible to harassment from a domestic corporation as from a foreign corporation. His damages do not change depending on where the Defendant does business. The introduction of this evidence serves only one purpose: to emphasize the corporate nature of the Defendant, to encourage the jury to find against the Defendant because it is not a local entity, and to create bias towards an out of state lawyer or party. The absence of any probative value coupled with the obvious prejudicial effect renders this type of evidence inadmissible.

**5.     Arguments Regarding the Lack of Credit Receipts or a Signed Application Underlying the Original Debt**

Evidence, statements or references regarding the Defendant's lack of credit receipts or a signed application underlying the original debt are irrelevant, immaterial, and would confuse the issues and mislead the jury. Fed. R. Evid. 401, 402 and 403.

Opposing counsel has indicated the origination of the debt will be at issue in this case. Though every single claim except the § 1692d(5) allegation has been dismissed on summary judgment, it has become apparent opposing counsel intend to relitigate virtually every aspect of the FDCPA under the general umbrella of 1692(d). That is to say, opposing counsel will attempt to argue Mr. Belcher was harassed by virtue of the fact that the documentation regarding the creation of the Lowe's account and the individual sales receipt evidencing the indebtedness are no longer available to the Defendant (if they ever were). Whether this is true or not, it has absolutely no bearing on the Defendant's <u>conduct</u> collecting the debt. Nowhere in the FDCPA does this type of documentation become a prerequisite to collecting a debt. In fact, opposing counsel would certainly not argue that if the documentation was present that the Plaintiff was <u>not</u> harassed. This shows the absence of any genuine issue regarding the origination of the debt. The Defendant is entitled to reasonably collect the account even without this type of supporting data which, in reality, is virtually never available. There is one issue in this case,

{W0296230.1 }

despite the repeated attempts of opposing counsel to revive the dead claims in the Complaint. Either Mr. Belcher was harassed by the conduct of the Defendant or he was not. Whether the Defendant has access to the original documents providing the debt is irrelevant especially in light of the judgment the Defendant was collecting.

Introduction of this type of material would only serve to confuse the jury as to the actual issue before the Court. This is not the time to relitigate the underlying collection lawsuit. The focus of this lawsuit is the Defendant's conduct. These matters take away from that focus in the hopes of confusing the jury into thinking that the potential lack of documentation surrounding the **2002** judgment somehow makes the conduct of the Defendant in 2009 illegal. There is no probative value yet there is a good deal of prejudice created. This type of evidence and argument should be inadmissible.

### 6. Evidence Showing the Judgment was Set Aside After the Defendant's Collection Efforts Stopped

Any evidence, statements or references about the fact the judgment against Mr. Belcher was set aside after the Defendant's collection efforts stopped are irrelevant, prejudicial and confuse the issues. Fed. R. Evid. 401, 402 and 403. The only question before the jury is the actions and mindset of the Defendant at the time the collection activity was taking place. Therefore, any reference to the judgment being overturned after the Defendant ceased collection efforts and after

{W0296230.1}

the Plaintiff initiated the present suit makes no issue in this case more or less likely to be true. It confuses the issue and leads the jury to conclude the validity of the collection efforts is linked to the after-the-fact overturning of the judgment.

### 7. Statements that the Jury Should "Send a Message"

The Defendant requests that Plaintiff be precluded from making any statement or argument during the course of the trial that the jury should "send a message" or other words to that effect. The Defendant would show unto the Court that such an argument is inflammatory, improper and prejudicial to the Defendant. Fed. R. Evid. 403. The FDCPA does not allow punitive damages and any such argument is improper and irrelevant to the issues the jury must consider.

The statutory damages allowed by the Plaintiff are capped at one thousand dollars. The only other damages recoverable (with the exception of fees) is for any actual harm Mr. Belcher suffered. This harm is compensated based on what he actually endured rather than on "sending a message" to this Defendant or any other debt collector. This type of argument creates a substantial risk of prejudice to the Defendant considering it has no legitimate application to the damages Mr. Belcher claims. More than that, it invites the jury to commit error by awarding damages greater than what Mr. Belcher actually suffered based on precisely this argument and therefore creating an automatically appealable issue. If these types of arguments are allowed, special interrogatories should be submitted to the jury to

{W0296230.1}

determine exactly what damages were intended to "send a message" as opposed to damages intended to compensate the Plaintiff.

### 8. Arguments Based on Facts Not in Evidence

Counsel for Plaintiff should be precluded from offering opinions or presenting arguments based on facts that are not in evidence in this case.

### 9. Evidence Based on Plaintiff's Good Character

That witness for Plaintiff, including, but not limited to, Mary Belcher, be precluded from offering any testimony, either live or through deposition, regarding David Belcher's reputation, and/or any other testimony regarding his "good character." Such testimony is irrelevant and constitutes inadmissible character evidence under Federal Rules of Evidence 404(a).

Under the Federal Rules of Evidence, evidence is irrelevant and inadmissible if it has no "tendency to make the existence of any fact that is consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").

Opposing counsel indicate this testimony should be allowed as rebuttal. It is argued that the defense of the case will necessarily demonstrate Mr. Belcher is either lying or exaggerating. To the extent such information may be admissible per

{W0296230.1}

FRE 608, the Defendant would not seek its exclusion. However, as an affirmative showing, such testimonials and evidence are clearly prohibited.

**10.     Negative References Regarding the Debt Collection Industry**

The Defendant requests that Plaintiff's counsel be prohibited from referring specifically or in general to articles, news specials, Internet information, or media coverage portraying the debt collection industry in a negative light. This includes anecdotal instances of reported abuse or harassment, and a general appeal to the jury to consider the industry as a whole to be corrupt, unethical, or otherwise portrayed as a rogue industry. Such references are irrelevant, inadmissible and only appeal to the bias and prejudices of any individual juror and has no selective application to the parties and issues in this case. Fed. R. Evid. 401 and 402. Any possible probative value of any negative portrayal of the debt collection industry is substantially outweighed by the potential for prejudice or jury confusion according to Fed. R. Evid. 403.

Opposing counsel have not agreed given the scope of the requested exclusion. However, such a prohibition is necessary to insure this matter is resolved based on the facts and law before the Court. It is easy to find a message board condemning debt collectors. It is easy to find an anecdotal news article written condemning the industry as a whole. These sorts of blanket condemnations have no relevance to the facts and circumstances of this case. It would be

{W0296230.1 }

improper and highly prejudicial to try the Defendant based on implications and allegations against other debt collectors contained in news articles, opinion pieces, or internet chat rooms.  Such intrinsic evidence only serves to confuse the issue and prejudice the jury.  The Plaintiff should not be able to prevail by condemning the whole industry nor should the Defendant be able to prevail by praising the industry.  The issues in this case are very specific and very nature.  Appealing to the general bias of the jury is prohibited and the Plaintiff should not be able to do so indirectly by citing general negative reports about the industry from unverified sources, in unrelated matters, against different parties, under different circumstances, at different times, and in different places.  It simply is not an appropriate argument and should be prohibited.

### 11. References to Other Litigation

The Defendant requests that Plaintiff's counsel be prohibited from referring in any manner to any other litigation, complaints or grievances involving the Defendant as such information is immaterial, irrelevant and any probative value is substantially outweighed by the inherent prejudicial effect of such evidence.  This includes presenting to the jury any reported verdicts, any Internet complaints, grievances submitted to agencies such as the Better Business Bureau, media coverage of the Defendant, and any reference at any stage of trial to any other

{W0296230.1 }

claimed FDCPA violation involving the Defendant.  Fed. R. Evid. 401, 402 and 403.

Opposing counsel refused to agree to this.  Presumably, such evidence will be used to support a pattern and practice of placing harassing phone calls.  This is not an element of the cause of action.  It is not relevant to damages.  Any such alleged instances would have to be proven to be substantially similar and to have occurred in reasonable proximity to this case.  Such events did not make it more or less likely that the number of calls Mr. Belcher received were harassing.  The evidence would, however, serve to confuse the jury about the issues in this case and certainly prejudice them against the Defendant.  Mr. Belcher needs to prove that he was subject to harassment, not that other people have accused the Defendant of the same thing.  This is yet another effort to expand the scope of this case to matters well beyond the claim that survived summary judgment.  It is irrelevant, immaterial, and should not be allowed.

**12.    Arguments Regarding Jury's Personal Reaction to Unwanted or Unpleasant Phone Conversations**

The Defendant requests that opposing counsel be prevented from directing any argument or reference to the jury regarding their personal reaction to unwanted or unpleasant phone conversation as such references and instances outside the debt collection context are immaterial and irrelevant.  Fed. R. Evid. 401 and 402. Examples, whether real or hypothetical, can only be directed to the personal

interest or biases of the jury and are, therefore, improper. For example, this would include but not be limited to linking the type of harassment prohibited by the FDCPA to instances where your daughter may be called repeatedly by and ex-boyfriend.

It is inappropriate to appeal to any juror's personal or individual interest. It is not appropriate to ask the juror to stand in the shoes of the Plaintiff (or Defendant). The jury must decide the case based on the law and the facts as presented in Court. Virtually anyone can manufacture a factual scenario under which phone calls become harassing. That would have nothing to do with whether the phone calls in this case were harassing. Moreover, such instances necessarily play upon the personal instincts and visceral reactions of the jury. In the present case, there is no indication of any bodily harm, threat, or danger to the Plaintiff. It is simply a question of his phone ringing. By inviting the jury to take the calls in the debt collection context and consider them harassing in a completely separate and unanalaguous context, the jury is invited to disregard the law and instructions from this Honorable Court. These types of arguments have long been forbidden (asking the jury to consider whether they would want a defendant in a rape trial to live next door to their kids) due to the obviously prejudicial nature. Similar arguments should not be allowed in this matter.

13. **Golden Rule Arguments**

{W0296230.1 }

"Golden Rule" evidence impermissibly appeals to the jury's sympathy and is irrelevant to the determination of the issue before the jury. The "Golden Rule" argument is universally recognized as improper because it "encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978). Veiled attempts to circumvent this prohibition also have been struck down as variations "calculated to evoke precisely the same improper emotional response." *Woods v. Burlington N.R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd* on other grounds, 107 S. Ct. 967 (1987). The Court should therefore prevent Plaintiff's counsel from making any such arguments.

**14.   Plaintiff's Credit Damage**

The Defendant requests the Plaintiff be precluded from presenting any evidence regarding any alleged damage to his credit rating as such information is immaterial to his present claim, irrelevant and inadmissible. Fed. R. Evid. 401 and 402. There is no evidence the Defendant reported the judgment to any credit reporting agency and the testimony provided by the Plaintiff involves a credit transaction occurring in 2006 – before the Defendant received the judgment for collection purposes. *See* Plaintiff's Depo. p. 72: 1-17. Furthermore, Plaintiff's testimony is speculative and hearsay as he indicates he does not have any proof that this judgment was the reason his 2006 credit application was rejected. *Id.*

This is distinct from Mr. Belcher claiming he was upset that it is on his credit report. His testimony is clear that he is frustrated to have this item on his credit. However, he has <u>not</u> presented <u>any</u> evidence that the reported judgment impacted his credit worthiness, that he was denied credit because of the reported judgment, or that CCS reported it to begin with. His surmisal that his credit was damaged is hearsay at best and speculative at worst. He has not proven any credit damage as part of his "actual damages" claimed in this matter.

Opposing counsel will not agree to this limitation. Credit damage is not a legitimate aspect of recoverable damages in this case. Whether Mr. Belcher was able to buy something on credit or paid a higher interest rate, is not the type of "actual damage" that would result from receiving a harassing phone call. He may have felt harassed because the item was on his credit report, but any damage to his credit cannot be linked to the fact that a phone call was placed. Moreover, he has no evidence that his credit suffered anyway. Nonetheless, while it would be appropriate for him to argue he was stressed or upset by the appearance of this item on his credit report, he would not be entitled to recover any damages for a change in his credit rating, a denial of credit, adverse interest rates, or any other "credit damage" that could result from adverse credit reporting. Moreover, he has not (and cannot) prove the item was on his credit report because of any conduct of this Defendant.

### 15. References to the Content of the Calls and Alleged Abusive Language By Defendant's Representatives

Plaintiff's claim that CCS' collectors made abusive statements to him is not at issue. The claim did not survive summary judgment and is not a question to be tried before the jury. Within the Complaint, the Plaintiff claims that CCS violated § 1692d in general. *See* Complaint at ¶ 15. The Defendant's Summary Judgment Motion challenged the Plaintiff's unspecified § 1692d claims. This Court's Memorandum of Opinion on (Doc. 38), clearly maintains the only claim that survived summary judgment is whether the Defendant "caused Belcher's telephone to ring with the intent to annoy or harass him" as prohibited by § 1692d(5). *See* Doc. 38, p. 13.

The Plaintiff has failed to meet his burden to create a genuine issue of material fact about any other §1692d claim. In deposition, the Plaintiff alleged the Defendant used "some pretty tough words," but could not recall them. *See* Plaintiff's Deposition, p. 60: 14-17, 25; p. 61: 2-4. As evidenced by this Court's Memorandum Opinion, the Plaintiff fell short in his burden to create a genuine issue of material fact regarding the content of the collections calls made by the Defendant.

Conversation with opposing counsel has made it clear they will seek to revive portions of the generally pled § 1692d claim to enable Mr. Belcher to claim he was verbally abused. The time to present such evidence was at the summary

judgment stage and Plaintiff's counsel presumably put before the court the facts relevant to his claims. All that survived was the call volume aspect in light of the <u>Meadows</u> decision.

The Defendant will not try dismissed claims by implication and therefore seeks a preemptory order restricting such evidence and testimony as the verbal harassment claims are dismissed and such evidence and allegations necessarily irrelevant and immaterial. The Plaintiff presented no other evidence of a § 1692d violation. There is one specific allegation left.

**16.   Evidence regarding the present employment status of any collector.**

Whether any collector involved in the collection of this account is still employed by CCS is irrelevant, immaterial and makes no fact in dispute more or less likely to be true. There is no evidence any collector was terminated for cause based on any event alleged in the complaint and, in fact, none were. However, if any collector is no longer employed it could be misconstrued by the jury to mean that collector did something wrong or illegal. All such employment decisions took place after the issues in this case and were unrelated to any issues in this case. As such there is no basis for admission per FRE 401, 402 or 403.

Opposing counsel will not agree to this restriction. It forces the Court to consider what potential probative value this information could have. Consider the present case: The Plaintiff complains of one collector but admits a second

collector was very polite. Would it be relevant to show that the second collector is no longer employed? Certainly not. It would be ridiculous to argue that the employee was fired for something to do with this case since those communications are, by admission, very professional. Therefore, what she is doing for a living right now is completely irrelevant. The same would be true for the collector whom Mr. Belcher dislikes. There is no evidence before the Court one way or the other regarding the Plaintiff's employment status nor whether the collector has been terminated for reason, resigned, or maybe even just died. The point is none of that would matter in relation to whether the calls placed by that collector were harassing in volume. It would not even matter as to the content. Either the calls harassed Mr. Belcher or they did not. The current employment status is irrelevant.

**17.    Evidence regarding account activity after CCS was aware of attorney representation**

This is a call volume case. There is no dispute that the calls stopped on November 30, 2009, when CCS received the contact information for plaintiff's counsel. Any and all communications with opposing counsel, and any and all account decisions, have nothing to do with the number and timing of calls previously received by Mr. Belcher. Such issues and information are irrelevant and, if probative of anything, such probative value is overmatched by the risk of prejudice or confusion. FRE 401, 402, 403.

Opposing counsel will not agree to this restriction. However, it is not disputed that CCS had no contact or communication with Mr. Belcher after he advised of the contact information for his counsel. How this could play into the prior harassing phone calls he received is a mystery. Any such communications with his lawyer were after the fact. Communications had stopped and the Defendant met its obligations under the FDCPA to communicate with him no longer. This further serves as an effort to confuse the jury regarding the legitimate issues at trial.

Respectfully Submitted,

 /s/ Neal D. Moore, III
Neal D. Moore, III
Larry Young, Jr.
Attorneys for Central Credit Services, Inc.

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama  35243
(205)879-8722
(205) 879-8831

{W0296230.1 }

## **CERTIFICATE OF SERVICE**

This is to certify that on this the 11th day of July, 2011 a copy of the forgoing document has served on all counsel of record via CM/EFC:

John G. Watts, Esq.
Watts Law Group, P.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

M. Stan Herring, Esq.
M. Stan Herring, P.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

/s/ Neal D. Moore, III
Of Counsel

{W0296230.1 }